IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Carolyn Wheelock, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 9:07-3786-HMH-BM |
| ) | |
| vs. ) | **OPINION & ORDER** |
| ) | |
| Michael J. Astrue, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. § 636(b)(1) (2006) and Local Civil Rule 73.02 for the District of South Carolina.[1]

Carolyn Wheelock ("Wheelock") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. In his Report and Recommendation, Magistrate Judge Marchant recommends affirming the Commissioner's decision. Wheelock objects to the Report and Recommendation. For the reasons stated below, the court reverses the Commissioner's decision and remands the case for further consideration as set forth below.

---

[1] The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1) (2006).

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. at 10-29.), and summarized as follows. At the time of the ALJ's decision on January 26, 2006, Wheelock was a forty-nine-year-old woman with three years of college education and past relevant work as a registered nurse. (Id. at 13.) Wheelock alleges that she has been disabled since March 22, 2002, due to limitations caused by fibromyalgia, headaches, hypertension, asthma, sleep apnea, polycystic ovarian syndrome ("PCOS"), irritable bowel syndrome and chronic fatigue syndrome.

Wheelock was diagnosed with tension headaches on April 30, 1999, by Dr. Jerry F. Sherrill ("Dr. Sherrill"), a neurologist. (Id. at 15.) On November 30, 1999, Wheelock visited Dr. Daniel R. Crow ("Dr. Crow"), a primary care physician, with complaints of wheezing, sinus congestion, and dizziness. Wheelock was diagnosed with sinusitis with Eustachian tube dysfunction and a sleep disorder. (Id.) On January 7, 2000, Wheelock visited Dr. Crow and reported continued asthmatic symptoms of dyspnea and coughing. Dr. Crow diagnosed Wheelock with chronic asthma impacted by obesity and possibly her beta blocker. (Id. at 16.)

In April 2000, Wheelock changed her primary care physician to Dr. Tony S. Poteat ("Dr. Poteat"). She visited Dr. Poteat on April 21, 2000, with complaints of chronic body aches, frequent headaches, depression, hypertension, asthma, sleep apnea, asthma, chronic back pain, PCOS, and elevated insulin. (R. at 16.) Dr. Poteat found that Wheelock's spine and back were not tender, her lungs were clear, her abdomen was mildly tender, and her major joints were

unremarkable. Dr. Poteat diagnosed Wheelock with fibromyalgia,[2] hyperinsulinemia, fatigue, asthma, depression, glaucoma, and PCOS. (Id. at 16-17.)

On May 29, 2001, Wheelock returned to her previous primary care physician, Dr. Crow, complaining of fatigue and generalized anxiety. (Id. at 17.) Dr. Crow diagnosed Wheelock with chronic fatigue from fibromyalgia, generalized anxiety disorder, major depressive disorder, and a history of renal calculi. He prescribed for Wheelock Adipex for weight loss and Meprozine for kidney stone pain. On February 7, 2002, Dr. Crow diagnosed Wheelock with fibromyalgia with an exacerbation in muscle spasms due to situation stressors and hypothyroidism. (Id.)

At a subsequent visit with Dr. Crow on March 22, 2002, Wheelock reported that her fibromyalgia, chronic pain, PCOS, sleep apnea, asthma, hypertension, migraine headaches, irritable bowel syndrome, gastroesophageal reflux disease, major depression, and generalized anxiety were interfering with her ability to work as a school nurse. (Id. at 18.) Wheelock stated that she could no longer walk the necessary distances or perform the duties required by her job. Dr. Crow stated that he would place her on medical leave awaiting permanent disability.

On April 22, 2002, Wheelock reported to Dr. Crow that her fibromyalgia was much improved and she had stopped taking Lortab, one of her medications. (R. at 18.) Further, she stated that her anxiety and depression had improved as well. On May 16, 2002, Wheelock reported that she was feeling well, but two months later she reported that she was under stress and having headaches due to her high blood pressure. (Id.)

---

[2] Fibromyalgia is a disorder classified by the presence of chronic widespread pain and a heightened and painful response to gentle touch.

An MRI on January 11, 2003, revealed a left base hemangioma within the T4 and T8 vertebral bodies, extensive anterior osteophyte formation with some bony bridging present throughout the thoracic and lumbar spines, mild disc bulges at L1-2, and ligamentum flavum thickening and/or facet joint hypertrophy on the left at T11-12. (Id. at 19.) Wheelock returned to see Dr. Crow on January 14, 2003, reporting continued left lower extremity weakness and mid-back pain and stating that her Transcutaneous Electrical Nerve Stimulation ("TENS") unit provided her no relief. On January 22, 2003, Wheelock began physical therapy. Her sessions ended on March 18, 2003, when Wheelock stated that she was feeling "so much better." (Id. at 20.)

On March 5, 2004, Wheelock was evaluated by Dr. Shelia O'Grady Irwin ("Dr. Irwin") of Internal Medicine Associates of Greenville. Wheelock was referred to Dr. Irwin for evaluation before having bariatric surgery. Dr. Irwin diagnosed Wheelock with a cardiac murmur, stable shortness of breath, stable Stein-Leventhal syndrome, and stable benign hypertension. (Id.) Dr. Irwin stated that as long as Wheelock's narcotic and Xanxax use were minimal, Wheelock could proceed with a bariatric evaluation.

Dr. Crow completed a disability questionnaire on Wheelock on April 22, 2004. He opined that Wheelock was unable to engage in full-time work even at a sedentary level of exertion. (R. at 20.) Dr. Crow also stated that if Wheelock attempted to work an eight-hour workday, she would "most probably have to rest away from the work station for more than an hour each day, and would probably miss more than three days of work per month." (Id. at 21.)

4

On January 19, 2005, Wheelock underwent a physical therapy evaluation. She reported to the physical therapist that she was unable to perform her walking program because of hip pain, fibromyalgia, and a frozen left shoulder. On January 21, 2005, Wheelock reported that she was unable to exercise because of hip pain. (Id.) The physical therapist reported that Wheelock walked 36 laps in the clinic on February 8, 2005.

Dr. Thaer Joudeh ("Dr. Joudeh") performed a consultative evaluation of Wheelock on February 21, 2005. (Id. at 22.) Wheelock informed Dr. Joudeh that she could perform daily activities, including showering, preparing food, and walking in her home without difficulty. Dr. Joudeh noted that Wheelock was ambulatory without difficulty or limitations, her walking and gait were within normal limits, her reflexes and sensation were normal, and she had full range of motion in her knees and back, with some limitations in forward flexion of the back. (Id.) Joudeh opined that Wheelock could stand and walk at least two hours in an eight-hour workday, and sit for less than six hours in an eight-hour workday.

Wheelock returned to physical therapy on March 9, 2005, and the physical therapist reported that she walked two miles. Wheelock's treating family nurse practitioner, Virginia Knight ("Nurse Knight"), opined in a questionnaire that Wheelock would have difficulty attending any work without missing more than three days per month. (R. at 22.) On July 8, 2005, Wheelock was evaluated by Dr. John Russell ("Dr. Russell"), a psychologist, who opined that she could not engage in sedentary work on a sustained eight hours per day, five days per week basis. (Id. at 23, 338).

On July 21, 2005, Wheelock was examined by Dr. Roland Knight ("Dr. Knight"). Dr. Knight noted that Wheelock did not need a cane or crutch and moved easily and quickly without limping. Further, Wheelock was able to dress and undress without assistance and her grip was normal. In addition, she had a normal range of motion in her wrists, elbows, shoulders, and cervical area. Dr. Knight's examination revealed no swelling in her knees and ankles. However, Dr. Knight noted slight pretibial edema on Wheelock's lower extremities. (Id. at 23.)

Wheelock filed an application for DIB on January 30, 2003. Wheelock's application was denied initially and on reconsideration. After a hearing held June 15, 2005, the ALJ issued a decision dated January 26, 2006, denying benefits. Thereafter, Wheelock appealed and the Appeals Council denied review on October 11, 2007. Wheelock filed the instant action on November 19, 2007.

## II. REPORT AND RECOMMENDATION

In her brief to the magistrate judge, Wheelock argued that the ALJ erred by improperly refuting the limitations imposed by her treating physicians and making an incomplete and inaccurate assessment of the facts. Additionally, Wheelock argued that the Appeals Council erred by failing to properly evaluate new evidence she submitted to the Appeals Council and that the new evidence necessitates remand of this matter for further consideration. (Pl.'s Reply 4-7.)

The magistrate judge found that the ALJ's decision was supported by substantial evidence and that the ALJ had not erred on either ground. The magistrate judge also concluded

that the Appeals Council was not required to make an assessment of the evidence submitted on appeal. Accordingly, the magistrate judge recommended affirming the Commissioner's decision to deny Wheelock benefits. (Report and Recommendation 14.)

### III. DISCUSSION OF THE LAW

#### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). Accordingly, the court "must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). Hence, absent any error of law, if the Commissioner's findings are supported by substantial evidence, the court should uphold the Commissioner's findings even if the court disagrees. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

#### B. Objections

First, Wheelock objects to the magistrate judge's conclusion that the ALJ properly applied the treating physician standard in discounting Dr. Crow's opinion as to Wheelock's limitations. (Objections 1-3.) Second, Wheelock argues that the magistrate judge's assessment of the ALJ's report is incomplete and inaccurate. (Id. at 3-5.) Third, Wheelock objects to the magistrate judge's conclusion that the Appeals Council did not err in failing to make specific

findings concerning the new evidence before denying review. The court will address each of the objections below.

### 1. Treating Physician Standard

First, Wheelock argues that the ALJ improperly refuted the limitations imposed by Dr. Crow, her primary treating physician. (Objections 1.) The ALJ must afford controlling weight to a treating physician's opinion if it is not inconsistent with substantial evidence in the record and is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2) (2006). See Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001) (If a treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and consistent] with the other substantial evidence in the record . . . [it is not] entitled to 'controlling weight.'")

Wheelock argues that the magistrate judge failed to acknowledge that Dr. Russell and Dr. Crow provide similar opinions both of which "reflect[ ] limitations caused by . . . fibromyalgia and other psychological impairments." (Objections 2.) Wheelock further adds, "to the extent that the agency's one-shot consultants' and non-examining record reviewers' assessments are inconsistent with Dr. Crow's opinion, more weight should be given to the treating expert than to the reports of sources who have either not examined [Wheelock] or only examined her once." (Id. at 3.)

The ALJ stated that he "considered the opinions of [Wheelock's] treating and examining physicians in reaching a decision in this case." (R. at 25.) According to the ALJ, while

Dr. Russell opined that Wheelock could perform less than a full range of sedentary work, little weight was given to this opinion as "Dr. Russell is a psychologist and is not qualified to render an opinion on the claimant's physical limitations." (Id.) Dr. Russell also stated that Wheelock had panic reactions, depression, and Generalized Anxiety Disorder, but he did not set forth specific limitations based on Wheelock's mental impairments. Accordingly, Dr. Russell's opinion, while it may have coincided with Dr. Crow's opinion, was not given controlling weight by the ALJ.

The ALJ also considered the opinions of Dr. Crow and Nurse Knight, who both assert that Wheelock could perform less than a full range of sedentary work. According to the ALJ, the

> medical signs and findings do not support the opinion that [Wheelock] would be unable to perform even sedentary work on a full-time basis. Physical examinations have consistently shown only mild limitation in the claimant's range of motion. There has been no radiographic evidence showing that the claimant has an impairment that would cause a level of pain that would cause an inability to perform sedentary work. [Wheelock's] hypertension and diabetes have been controlled by medication, as have her asthma and sleep apnea. Her lungs have generally been clear, and she has experienced no acute exacerbations of her asthma. Recent examinations have failed to show any of the muscle tenderness that would be expected with fibromyalgia. Therefore, the [ALJ] finds that the opinions of Dr. Crow and [Nurse] Knight are not well-supported by the medical signs and findings, and these opinions have not been accorded controlling weight.
> . . . . The [ALJ] finds that there is persuasive contradictory evidence indicating that [Wheelock] is not as limited as was found by her treating physicians.

(Id. at 26.) Accordingly, the ALJ concluded that the objective medical evidence was inconsistent with the medical opinion of Dr. Crow.

Dr. Knight's examination of Wheelock revealed, in part, that Wheelock was able to move easily and quickly without limping, her straight leg test was negative and indicated full range of motion in the upper and lower extremity joints. Further, Wheelock had normal range of motion in her wrists, elbows and shoulder, was able to walk heel to toe, had no swelling in her knees and ankles, and her muscles were not sensitive to light squeeze pressure, one of the hallmarks of fibromyalgia. (Id. at 23-24.) After review, the ALJ concluded that Wheelock could lift and carry up to ten pounds occasionally; sit for approximately six hours in an eight hour workday, and stand and walk for at least two hours in an eight hour workday. Further, the ALJ found that Wheelock could only occasionally push and pull with her upper extremities and balance, kneel, crouch, or stoop. In addition, the ALJ concluded that she was unable to climb ladders and ropes or crawl. The court finds that the ALJ's conclusion is supported by substantial evidence for the reasons stated above and included in the ALJ's decision. Based on the foregoing, Wheelock's objection that the magistrate judge erred in concluding that the ALJ properly applied the treating physician standard is without merit.

### 2. Incomplete & Inaccurate Assessments

Second, Wheelock argues that the magistrate judge's assessment of the ALJ's decision is incomplete and inaccurate. According to Wheelock, the magistrate judge did not properly evaluate (1) the weight given to Wheelock's obesity, (2) the reliance "upon the opinions of two agency non-examining record reviewers rather than the findings of the treating psychologist, Dr. Russell, who imposed limitations that would preclude competitive work," and (3) the ALJ's application of Medical-Vocational Guidelines (also known as "Grids").

### a. Wheelock's Obesity

Wheelock asserts that because the ALJ did not "explain how he reached his conclusion as to whether her obesity caused any physical or mental limitation . . . [, he] cannot be said to have considered the impact of obesity on symptoms he rejects." (Objections 4.) In his findings of fact, the ALJ notes that Wheelock's obesity is considered "severe." (R. at 28.) The ALJ does not explicitly discuss the effect of Wheelock's obesity on her capabilities. The ALJ, however, discusses the findings of Dr. Sherrill, Dr. Crow, Dr. Poteat, Dr. Irwin, Dr. Joudeh and Dr. Knight who explicitly discussed Wheelock's obesity and how it impacted her physical limitations, individually and in relation to her other ailments and physical limitations. As such, Wheelock's obesity was a factor in each physician's diagnosis and evaluation of Wheelock. Therefore, although the ALJ committed harmless error in failing to provide a detailed discussion of Wheelock's obesity, the court finds that this was an implicit factor considered in the ALJ's discussion and findings. Therefore, this objection is without merit.

### b. Weighing Physician Opinions

Next, Wheelock asserts that the ALJ improperly relied upon the opinions of agency physicians rather than Dr. Russell, her treating psychologist. As discussed above, treating physician opinions are only given weight if their conclusions are not inconsistent with substantial objective medical evidence. See 20 C.F.R. § 404.1527(d)(2) (2006). Two state agency psychologists found that Wheelock's affective disorder was not severe and resulted in only mild restrictions in her activities of daily living, and mild difficulties in maintaining social functioning and in maintaining concentration, persistence and pace, with no episodes of

decompensation. (R. at 144-57; 186-99.) The records and opinions of these consultative examining physicians provide substantial evidence to support the residual functional capacity found by the ALJ. See e.g., Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992); Richardson v. Perales, 402 U.S. 389, 408 (1971). As such, Wheelock's objection is without merit.

### c. Grids

Wheelock also objects to the magistrate judge's determination that the ALJ properly relied on the Grids to determine that jobs exist in the national economy that Wheelock could perform. The Grids

> consist of a matrix of the four factors identified by Congress – physical ability, age, education, and work experience . . . [that] set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.

Heckler v. Campbell, 461 U.S. 458, 461-62 (1983). Wheelock argues that her pain is "sufficiently nonexertional in nature" and thus the Grids may not be applied to conclude that she is disabled. (Objections 5.) Once the ALJ determined that Wheelock could not perform her past relevant work as a result of her impairments, the burden shifted to the ALJ to identify jobs in the national economy that Wheelock could perform. See Wilson v. Heckler, 743 F.2d 218, 220 (4th Cir. 1984). "To meet this burden, the Supreme Court has approved the use of the tables or grids" which the ALJ used in this case. Id.

Generally, "reliance on the grids is precluded where the claimant suffers from a nonexertional impairment." Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984) (internal

12

quotation marks omitted). However, "not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989). "The proper inquiry . . . is whether a given nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." Smith, 71 F.2d at 725. "If the condition has that effect, it is properly viewed as a nonexertional impairment, thereby precluding reliance on the grids to determine a claimant's disability." Id. (internal quotation marks omitted).

The magistrate judge found that the ALJ's decision to use the Grids was proper, as substantial evidence supported the ALJ's determination that Wheelock maintained the residual functioning capacity for sedentary work and that her ability to perform sedentary work was not reduced by any nonexertional limitations. (Report & Recommendation 9-11.) Wheelock contends that the pain she experiences from fibromyalgia is a severe nonexertional impairment that precludes application of the Grids.

In his report, the ALJ finds that Wheelock's "obesity; lumbar spondylosis; hypertension; and fibromyalgia are considered 'severe' based on the requirements in [20 C.F.R. § 404.1520(c)]." Despite the fact that fibromyalgia is a severe impairment, the ALJ concludes that "while [Wheelock] has some non-exertional limitations, these limitations do no [sic] significantly erode the sedentary occupational base." (R. at 27.) Without any discussion regarding Wheelock's nonexertional limitations,[3] the ALJ makes a blanket conclusion that Wheelock's nonexertional limitations do not prevent her from performing sedentary work.

---

[3] Based on the record, Wheelock suffers from both pain and mental limitations–both of which are nonexertional limitations.

As such, the court is unable to determine whether the ALJ is referring to Wheelock's pain, mental limitations, or some additional nonexertional limitation. Accordingly, the ALJ's assessment is incomplete. Furthermore, the ALJ has not discussed how the additional information provided to the Appeals Council fits into his analysis regarding Wheelock's nonexertional limitations. Unless the ALJ explicitly indicates the weight given to all relevant evidence, the court cannot determine on review whether the ALJ properly utilized the Grids. On remand, the ALJ should consider the new and relevant information submitted to the Appeals Council as it relates to Wheelock's nonexertional limitations and, if necessary, obtain the testimony of a vocational expert.

### 3. Appeals Council

Lastly, Wheelock argues that the Appeals Council erred in failing to articulate specific findings concerning new evidence before denying review. Specifically, Wheelock alleges that the "evidence submitted to the Appeals Council from Drs. LeBlond, Dr. [sic] Russell, Tollison, and Langley is new." (Objections 6.) The magistrate judge concluded that "a review of by [sic] the materials submitted to the Appeals Counsel [sic] does not show that a medical opinion upon which a denial of benefits was based has been contradicted by a new opinion from the same source." (Report & Recommendation 13.) As such, the magistrate judge concluded that the Appeals Council was not required to give any explanation as to why it rejected the new evidence.

"The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review if the additional evidence is (a) new, (b) material, and

(c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95-96 (4th Cir. 1991) (internal quotation marks omitted). Evidence is new "if it is not duplicative or cumulative." Id. at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id.

Wheelock submitted over one hundred pages of additional information to the Appeals Council to review. (R. at 4.) The medical records submitted to the Appeals Council contain both duplicative as well as new and material information. In his final decision, the ALJ notes that Dr. Russell does not "set forth specific limitations based on [Wheelock's] mental impairments." (Id. at 25.) In the new evidence submitted to the Appeals Council, however, Dr. Russell explains, in part, that Wheelock has such psychological problems that she could not "attend to or concentrate on any activity on a consistent basis, and that, if she attempted to work, she would not be able to deal with even basic supervision, nor would she be able to concentrate on the most basis [sic] work activities." (Id. at 361.) Dr. Russell goes on to explain that Wheelock is severely clinically depressed and details further limitations that Wheelock's mental impairments would place on her in a work setting. The ALJ, therefore, must address this new information.

Additionally, the ALJ notes that "[r]ecent examinations have failed to show any of the muscle tenderness that would be expected with fibromyalgia." (Id. at 26.) Wheelock submitted numerous documents to the Appeals Council which detail the pain that she experiences due to fibromyalgia and other ailments. For example, on October 18, 2005, Dr. Russell noted that Wheelock "has had back spasms for the last 2 days which is one of the worst symptoms of her

15

fibromyalgia." (Id. at 367.) Another medical record states that Wheelock suffered from "acute onset colicky right flank pain radiating to the right lower quadrant. A CT scan was obtained at Greenville Radiology which showed a 9 mm stone in the distal right ureter causing high grade obstruction." (R. at 417.) Additionally, on July 19, 2006, in a follow-up doctor visit, Wheelock reported aching and burning pain in her arms, legs, shoulders, neck, and back. (Id. at 421.) On June 9, 2006, Wheelock reported that on a scale of 1-10, on a good day her pain rating was a 5 and a 10 on a bad day. (Id. at 432.) She reported pain in her legs, hip, back, neck, and arm. Wheelock also provided the Appeals Council with a Pain Patient Profile created by Drs. Tollison and Langley on June 9, 2006. (Id. at 438-47.) The numerous documents that discuss the pain that Wheelock has experienced are new and material.

There is a split among South Carolina district courts as to whether the Appeals Council must make an assessment of additional evidence in its decision to deny review. See Jackson v. Barnhart, 368 F. Supp. 2d 504, 508 n. 2 (D.S.C. 2005) ("[T]here is no requirement that the Appeals Council articulate its own assessment of the additional evidence in its decision to deny review." (internal quotation marks omitted)); but see Harmon v. Apfel, 103 F. Supp. 2d 869, 873 (D.S.C. 2000) ("[T]he Appeals Council must articulate its reason for rejecting new, additional evidence, so that a reviewing court may understand the weight the Commissioner attributed to the new evidence.").

However, in Jordan v. Califano, 582 F.2d 1333, 1335-36 (4th Cir. 1978), the United States Court of Appeals for the Fourth Circuit explained that when the Appeals Council simply states that "additional evidence ha[s] been considered" that explanation is "plainly deficient."

The court held that in determining whether an applicant is entitled to disability benefits, the ALJ must "consider all relevant evidence, including that [given to the appeals council], and must indicate explicitly that such evidence has been weighed and its weight." Id. at 1335 (internal quotation marks omitted); see also, Myers v. Califano, 611 F.2d 980, 983 (4th Cir. 1980) ("The Medical Center's report, summarizing the results of a psychiatric interview of Myers, contained new information relevant and material to the evaluation of her condition. The Appeals Council's failure to make specific findings concerning it was reversible error.").

In light of the Fourth Circuit's holding in Jordan, the court agrees with the holding in Harmon. In Harmon, the court concluded that "when the Appeals Council consider[s] evidence that the ALJ did not have the opportunity to weigh, and reject[s] that new, additional evidence without specifying a reason for rejecting it or explicitly indicating the weight given to the evidence," the ALJ must, on remand, "articulate his assessment of the additional evidence presented by" an applicant. 103 F. Supp. 2d at 874. Consequently, the court remands the case to the ALJ to articulate his assessment of the new and material evidence presented by Wheelock so that this court may determine whether the ALJ's decision is supported by substantial evidence. Based on the foregoing, the court adopts the Report & Recommendation only to the extent it is consistent with this opinion.

It is therefore

**ORDERED** the Commissioner's decision is reversed under sentence four of 42 U.S.C. § 405(g) and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
February 2, 2009